# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | MATTHEW F. KENNELLY | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 8407 | DATE | 12-20-02 |
| CASE TITLE | Joseph J. Murray (IDOC # K-52438) v. D. Artz, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motion to proceed in forma pauperis [4-1] is granted. Payment to be assessed by separate order. After initial review pursuant to 28 U.S.C. § 1915A, the court dismisses plaintiff's medical care claims, dismissing defendants Jane Doe (Nurse) and John Doe (Doctor). The clerk is directed to issue summons to defendants Artz, Briggs and Corral, and the U.S. Marshal is appointed to serve them. The Marshal is directed to serve defendants with a copy of the Memorandum Opinion and Order together with the summons and complaint. The Marshal is authorized to mail a request for waiver of service to defendants in the manner prescribed by Fed.R.Civ.P. 4(d)(2) before attempting personal service on defendants. The clerk shall send plaintiff a Notice of Availability of a Magistrate Judge and Instructions for Submitting Documents along with a copy of this order.

(11) ■ For further detail see order attached to the original minute order.

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | DEC 31 2002 date docketed | |
| ✓ | Docketing to mail notices. | | | 7 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | courtroom deputy's initials | DEC 30 PM 12:13 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

JOSEPH J. MURRAY,  )
　　　　　　　　　　 )
　　　　Plaintiff,　 )
　　　　　　　　　　 )
　　v.　　　　　　　 )　Case No. 02 C 8407　　**DOCKETED**
　　　　　　　　　　 )　　　　　　　　　　　　DEC 3 1 2002
D. ARTZ, et al.,　　 )
　　　　　　　　　　 )
　　　　Defendants.  )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Joseph J. Murray, a prisoner in the custody of the Illinois Department of Corrections (IDOC) at Menard Correctional Center, sues correctional and medical personnel for violating his constitutional rights at Joliet Correctional Center, his former place of confinement. The court grants Murray's motion for leave to proceed without prepayment of the filing fee, and a separate order will be entered directing installment payments of the filing fee as required by 28 U.S.C. § 1915(b). After reviewing the complaint as required by 28 U.S.C. § 1915A, the court permits Murray to proceed on his claim of excessive force and dismisses Murray's claim for inadequate medical care.

### Allegations of the complaint

Murray alleges that on January 27, 2002, he was confined in the segregation unit at Joliet Correctional Center. Segregation prisoners are fed by passing food trays through a small opening in the cell door called a "chuckhole" having a cover that can be opened and closed from outside the cell. Defendant Artz attempted to give Murray a meal tray containing fish. Murray objected, saying he was allergic to fish, and asked for a substitute. Murray alleges that Artz became enraged, yanked the tray from Murray's hands and threw it on the floor, and defendants Artz, Briggs and Corral slammed the door of the chuckhole on Murray's right hand. The defendants then refused Murray's request to summon a medical technician.

1

Fifteen or twenty minutes later, a correctional lieutenant took Murray to the health care unit, where nurse "Jane Doe" and doctor "John Doe" gave Murray's hand a "non-thorough examination," "intentionally disregarding" the seriousness of the injury. Only on March 12, 2002, after Murray had been transferred to Menard Correctional Center, was it discovered that a third metacarpal had been fractured and had healed improperly.

## Legal sufficiency of the claims

Before permitting the case to proceed, the court is required to review the complaint and dismiss any portion of the complaint it finds frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A. In determining whether the complaint states a claim upon which relief may be granted, the court accepts as true the allegations of the complaint, viewing them in the light most favorable to the plaintiff. *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000).

### A. Excessive Force

Murray has stated a claim against defendants Artz, Briggs and Corral for slamming the chuckhole door on his hand. The Eighth Amendment's Cruel and Unusual Punishments Clause prohibits the unnecessary and wanton infliction of pain on prisoners. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). The critical question is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson*, 503 U.S. at 6 (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). For purposes of this review, the court must accept as true Murray's allegation that the defendants' action was unprovoked. Although physical force that may be regarded as *de minimis* and not "of a sort repugnant to the conscience of mankind" will not support a claim, *Hudson*, 503 U.S. at 9-10, *Outlaw*, 259 F.3d at 838, force that results in a broken bone cannot be considered *de minimis*.

### B. Medical Care

We turn next to Murray's claims against the unnamed doctor and nurse. The Constitution

2

does not guarantee professionally competent medical care for prisoners; defendants can be liable only if they are deliberately indifferent to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002). Giving Murray a "non-thorough" examination, or failure to order an x-ray that would have revealed the broken bone, could be medical malpractice but would not support an Eighth Amendment claim. See *Estelle*, 429 U.S. at 105-106; *Walker*, 293 F.3d at 1037. "[T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment." *Estelle*, 429 U.S. at 107.

Nevertheless, Murray alleges the defendants "intentionally disregarded" the seriousness of his injury. Although the defendants cannot be held liable under the Eighth Amendment on the basis of what, as medical professionals, they should have known, they cannot escape liability by making a deliberate effort to avoid discovering the truth. *Higgins v. Correctional Medical Services of Illinois, Inc.*, 178 F.3d 508, 511 (7th Cir. 1999); *McGill v. Duckworth*, 944 F.2d 344, 351 (7th Cir. 1991). The court finds that Murray has stated a claim against the doctor and nurse.

### Exhaustion of administrative remedies

The court is also required to dismiss any part of the complaint it finds "frivolous." This denotes not only a claim wholly lacking in merit, which these are not, but also one that, for whatever reason, clearly cannot proceed. *Okoro v. Bohman*, 164 F.3d 1059, 1063 (7th Cir. 1999). The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions ... by a prisoner ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a), requiring that any case in which an available administrative remedy has not been exhausted be dismissed. *Massey v. Wheeler*, 221 F.3d 1030, 1034 (7th Cir. 2000). It appears that Murray has not exhausted available administrative remedies with respect to his medical care claim. Although failure to exhaust administrative remedies is an affirmative defense, when a valid affirmative defense is apparent from the complaint, the court

3

may dismiss the claim as frivolous. *Walker v. Thompson*, 288 F.3d 1005, 1009-10 (7th Cir. 2002).

Although Murray alleges in the complaint that he exhausted administrative remedies with respect to his medical care claim, the written grievances attached as exhibits to the complaint show that he has not. Written instruments made exhibits to a complaint are part of the complaint for all purposes, Fed. R. Civ. P. 10(c), and if an exhibit shows that an allegation of the complaint is false, the exhibit controls. *See Thompson v. Illinois Department of Professional Regulation*, 300 F.3d 750, 754 (7th Cir. 2002); *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 454 (7th Cir. 1998).

Murray has attached a copy of a grievance dated April 16, 2002 and filed at Menard Correctional Center relating to his altercation with Artz on January 27, 2002. The grievance primarily addresses Murray's due-process objections to his disciplinary convictions arising from the altercation, which had been heard and decided by an Institutional Adjustment Committee at Menard on March 8, 2002. Nevertheless, the grievance does allege that Artz used unjustifiable force in slamming the chuckhole door on Murray's hands.

Murray also attached a copy of the administrative response to this grievance, dated March 26, 2002, in which Menard grievance officer Mavis Gross indicates that her review of the grievance showed no violation of Murray's due process rights. Jonathan Walls, the warden of Menard, signed his concurrence in the denial of the grievance on August 16, 2002. A handwritten note on the copy, presumably by Murray, indicates that he mailed his appeal on September 8, 2002.

Murray has not furnished a copy of the ruling of the Administrative Review Board and the Director of the Department of Corrections, representing the final stage of the grievance procedure. If no final decision was rendered before he filed suit, Murray would have failed to meet the exhaustion requirement and this suit would have to be dismissed. Nevertheless, these exhibits are consistent with Murray's having exhausted his claim against Artz, so the suit will be

allowed to proceed.

Assuming that Murray received a final decision on this grievance, it is questionable whether it served to exhaust administrative remedies with respect to Briggs and Corral, who are only named as "staff involved" on the first page of the grievance. Although the second page of the grievance has not been included in the exhibit, Murray's third-page account of Artz's slamming the chuckhole door on Murray's hands inexplicably fails to mention either Briggs or Corral, and they are not mentioned in the remainder of the grievance.

According to 42 U.S.C. § 1997e(a), no suit may be filed by a prisoner before administrative remedies have been exhausted, but the statute does not limit the persons who may be sued to those accused in the administrative process. The Seventh Circuit has not held that a prisoner must have named (or described) each potential defendant in his grievance before that defendant may be sued. In *Strong v. David*, 297 F.3d 646, 649, (7th Cir. 2002), the Seventh Circuit held that grievances must contain the sort of information that the administrative system requires. In the absence of any regulation issued by the state, the correctional system, or the individual institution prescribing the contents of a grievance,

> a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. As in a notice-pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming.

*Id.* at 650.

Read literally, this language does not require a prisoner to have named a prospective defendant in his grievance, even if the prospective defendant was known to the prisoner when the grievance was written. A prisoner can "object intelligibly to some asserted shortcoming" without naming or blaming anyone; he might, for example, simply complain to the warden that he hasn't been fed for two days. He might not know who was responsible, he might know but think it prudent not to say, or he might not care. While such a grievance would presumably induce correctional officials to see that the prisoner was fed, it might or might not prompt an

5

investigation and the assignment of responsibility for neglecting the prisoner.

This makes for a problematic interface between grievance and lawsuit. There are no lawsuits without defendants, and no no-fault judgments. A plaintiff who "object[s] intelligibly to some asserted shortcoming" without naming a responsible defendant risks dismissal. Courts have stated that a major purpose of the exhaustion requirement is to give prison administrators prompt notice of problems, so that they may be corrected internally in the first instance and an administrative record developed prior to suit. See *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002); *Smith v. Zachary*, 255 F.3d 446, 450-51 (7th Cir. 2001). This is furthered by requiring the prisoner to name the responsible persons in his grievance whenever possible, and hindered if a prisoner can withhold information in the administrative proceeding and accuse new defendants in his complaint. In *Curry v. Scott*, 249 F.3d 493 (6th Cir. 2001), the Sixth Circuit held that prisoners who had named in their grievances an officer who had assaulted them but had failed to name a second officer who allegedly failed to intervene had not exhausted their claim against the second officer:

> The claim against Howard, however, is a separate claim, against a separate individual, premised on a separate and independent legal theory. Because Howard was not mentioned in the prisoners' grievances, SOCF [Southern Ohio Correctional Facility] did not know that the prisoners specifically had a grievance against him, so SOCF had no reason to pursue any claim or disciplinary action against Howard based on the prisoners' official complaints. As this Court stated in *Freeman v. Francis*, 196 F.3d at 644, "the importance of using the prison grievance process [is] to alert prison officials to problems." The plaintiffs' grievances may have alerted SOCF to problems with Scott, but they did not reasonably alert SOCF to problems with Howard.

*Id.* at 504. Here, Murray's grievance alerted IDOC to his claim that Artz had assaulted him, but did not say Briggs or Corral participated. Nevertheless, because the Seventh Circuit did not adopt the reasoning of *Curry*, and Briggs and Corral were at least mentioned in Murray's grievance, the court finds that Murray has adequately alleged exhaustion as to his claims against them. As to Murray's claim of inadequate treatment, however, there is no hint in the grievance, so it does not suffice to "alert[] the prison to the nature of the wrong for which redress is sought"

6

even under a liberal reading of *Strong*.

Murray has also provided a copy of a second grievance, an "emergency grievance" purportedly signed on August 30, 2002, but dated October 1, 2002 at the top of the form. The grievance is stamped "RECEIVED NOV 06 2002 OFFICE OF INMATE ISSUES."[1/] A certificate of service contains Murray's declaration that the grievance was mailed on October 1, 2002, to Ms. Gross, the grievance officer at Menard, and to Donald N. Snyder, Director of the Illinois Department of Corrections. The grievance seeks "immediate corrective treatment such as orthopedic surgery" for Murray's hand. It states that Murray was assaulted by Artz, Briggs and Corral, and also claims that the doctor and nurse at Joliet "showed a callous disregard for my health and safety to my serious medical needs by overlooking the serverity [sic] of my injury and by not ordering of conducting a adequate standard test's on January 27, 2002 to properly treat my fractured right hand." The grievance alleges that Murray was not aware of "this claim of negligence" until he was provided with copies of his medical records on April 30, 2002.

This second grievance cannot establish exhaustion of administrative remedies with respect to any of the claims raised here. Assuming that Murray did not learn until April 30, 2002 that his hand had not been properly treated, and also assuming that the grievance was initially filed on August 30, 2002, rather than October 1, it would still have been too late. Prisoners must follow administrative regulations in filing their grievances and appeals, *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002), and IDOC regulations require a grievance to be filed within 60 days after the discovery of the incident, occurrence, or problem giving rise to the grievance. 20 Ill. Admin. Code § 504.810(a). Though the second grievance may have been timely with respect to Murray's demand for treatment at Menard, it could not have been timely with respect to either his claim of assault or his claim of inadequate treatment at Joliet.

Accordingly, whether Murray properly exhausted available administrative remedies

---

[1/] The pages of the first grievance and its disposition are similarly stamped; the court infers that Murray attached copies of them as exhibits to the later "emergency grievance."

7

depends on the first grievance alone. As the first grievance did not even mention his medical-care claims, they are dismissed. In the unlikely event that the Administrative Review Board treats Murray's second grievance as timely and issues a ruling on the merits, or Murray can otherwise show that these claims have been properly exhausted, he may move to reinstate them, attaching a copy of the final decision of the Administrative Review Board to the motion.

The clerk is directed to issue summons to defendants Artz, Briggs and Corral, and the U.S. Marshal is appointed to serve them. The Marshal is directed to serve defendants with a copy of this order together with the summons and complaint. The Marshal is authorized to mail a request for waiver of service to defendants in the manner prescribed by Fed. R. Civ. P. 4(d)(2) before attempting personal service on defendants.

Murray is instructed to file all papers concerning this action with the clerk of court in care of the prisoner correspondent. In addition, Murray must send an exact copy of any filing to defendants or, if represented by counsel, to counsel for defendants. Murray must include on the original filing a certificate of service stating to whom exact copies were mailed and the date of mailing. Any paper that is sent directly to the judge or otherwise fails to comply with these instructions may be disregarded by the court or returned.

                                                      _____
                                                      MATTHEW F. KENNELLY
                                                      United States District Judge

Date: December 20, 2002